In re Robert GUERRERIO, Debtor.

ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff,

v.

Robert GUERRERIO, Defendant.

Bankruptcy Nos. 91 B 21948, 92 B 5085A.

United States Bankruptcy Court, S.D. New York.

Aug. 18, 1992.

Michael · S. Belohlavek, Townley & Updike, New York City, for Allstate Life Ins. Co.

Harold, Salant, Strassfield & Spielberg, White Plains, N.Y., for Robert Guerrerio.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Allstate Life Insurance Company of New York ("Allstate") filed the present adversary proceeding against the Chapter 7 debtor, Robert Guerrerio, and has moved for summary judgment on its first claim for relief, which seeks to declare its debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (4). Allstate contends that the debtor's prepetition guilty plea to a federal indictment for tax and Social Security fraud in which the debtor admits receiving disability benefits from the Social Security Administration while working, constitutes an admission that he was working while he fraudulently claimed and received "total disability" benefits from Allstate pursuant to an insurance policy that he held with Allstate.

## FACTUAL BACKGROUND

The debtor, Robert Guerrerio, filed with this court a Chapter 7 petition on December 13, 1991. On the same day, a chapter 7 trustee was appointed. On March 23, 1992, Allstate initiated the instant adversary proceeding in which it seeks to have its debt deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (4). Pursuant to Local Bankruptcy Rule 13(h), the debtor and Allstate agreed that certain material facts were not in issue.

On April 2, 1974, the debtor submitted an application for insurance to Allstate, in which he represented that he was an "owner contractor" engaged in "caulking." Thereafter, Allstate issued its Allstate Income Policy # 823 100 3228 (the "Policy") to the debtor. The Policy provided for a $1,000 per month disability benefit and defined "total disability" as follows:

[D]uring the period of one year from the date the monthly benefit first becomes payable shall mean disability which continuously prevents the insured from performing every duty pertaining to his occupation, and thereafter shall mean disability which continuously prevents the

insured from engaging in any occupation or employment for wage or profit for which he is reasonably qualified by his education, training, or experience, or may reasonably become qualified.

Policy, at 3.

On or about February 28, 1977, the debtor submitted a claim for monthly benefits under the Policy based upon the representation that he had become totally disabled as a result of an injury sustained in an accidental fall in his home. The debtor submitted proof of his injuries and appeared for and was examined by Allstate's physicians. From 1977 through at least 1985, the debtor represented to Allstate in the "Claimant's Supplemental Statements" that he was not employed in any capacity. *See Affidavit of Michael S. Belohlavek in Support of Plaintiff's Motion for Summary Judgment*, Exhibit I.

Thereafter, the debtor sought and accepted from Allstate monthly disability income payments totalling in excess of $98,000 based upon representations that he was totally disabled and unable to perform the duties of his occupation or to engage in any occupation or employment for wage or profit for which he was reasonably qualified by his education, training or experience or might reasonably become qualified. The debtor also sought and received waivers of premiums from Allstate for his life insurance coverage with Allstate based upon the same representations that he was totally disabled.

On or about December 18, 1986, the debtor was indicted by the federal government for various crimes including mail fraud, wire fraud, income tax evasion, money laundering, the receipt of $101,000 in disability income payments from the Social Security Administration and the receipt of approximately $98,000 of disability benefits from Allstate. On December 15, 1987, the debtor pleaded guilty to Counts 1, 4, 6 and 11 of the indictment.

Count 1 of the indictment is an income tax conspiracy charge. In pleading guilty to this count, the debtor admitted that from 1977 up to and including the date of the indictment, the debtor had obtained income from the family company, Rey Caulking Co., Inc. ("Rey Caulking"), which was not reported on his personal income tax returns. Count 1 specifically states that the debtor received approximately $98,000 in disability payments from Allstate "based upon his false representation that he was unable to work" and that this income was not reported on his income tax returns.

Count 1 also pleads that the debtor "was the *de facto* owner of Rey Caulking" and that between the Fall of 1979 and the Spring of 1982, Rey Caulking received more than $2.3 million for masonry work from Co-op City. Count 1 recites certain overt acts, such as soliciting Co-op City employees on behalf of Rey Caulking and bribing New York State representatives, that the debtor carried out in an effort to obtain work for Rey Caulking. As a result of the debtor's pleading guilty to Count 1, the debtor filed amended tax returns.

The debtor also pleaded guilty to Count 11 of the indictment,[1] which involves mail fraud relating to the disability payments the debtor obtained from the Social Security Administration. In the indictment, Count 11 is set forth with Count 12, to which the debtor did not plead guilty. Count 12 is also a mail fraud count and specifically relates to the disability payments the debtor received from Allstate. Count 12 was dismissed. In pleading guilty to Count 11 of the indictment, the debtor agreed that the following summary of his activities was accurate:

> With respect to the mail fraud, your Honor, Mr. Guerrerio, in 1977, claimed that he had become injured and could no longer work. He applied for benefits under the Social Security system and he and his family, entire family, were put on the roll to receive Social Security disability benefits.
>
> Mr. Guerrerio represented to the Social Security Administration that because of

---

1. Counts 4 and 6, to which the debtor also pleaded guilty, involve aiding and assisting in false and fraudulent corporate tax returns, and submitting false personal tax returns, respectively.

his injury he could not work and that since his injury he had not worked. These representations were made from time to time from 1977 forward. In particular, they were made during 1980 when he was in administrative proceedings to try to have his benefits restored after they had been cut off.

At the time he made representations that he was not working, he was in fact managing Rey Caulking and running the Co-op City job. He continued to manage Rey Caulking and continued to run the Co-op City job through the period of time he was also collecting disability income on the basis he could not work, and this is the fraud that underlies Count 11, mail fraud.

The mailings of checks, payment benefits, to his home in Yonkers on that. These mailings continued up until the time of the indictment, indeed after the time of the indictment.

*Plea Hearing Transcript, United States v. Guerrerio et al.*, at 18–19 (S.D.N.Y. December 15, 1987) (Edelstein). After agreeing to the above allocution as set forth by the attorney for the federal government, the debtor, in his own words, stated:

> As far as the Social Security, when I was disabled on Social Security, I was disabled for physical labor, and I performed that particular work at Co-op City. It was on a managerial basis and I was not doing physical but doing mental labor.
>
> I did not report it to Social Security that I was doing that type of work.

*Id.* at 21.

Allstate alleges that at no time while making monthly disability income payments to the debtor, did it know that the debtor was in fact employed. Allstate further alleges that had it known that the debtor was employed, it would not have made disability income payments to the debtor under the Policy and it would have declined to waive the premium payments that were otherwise due under the debtor's life insurance policies with Allstate.

On or about January 30, 1991, prior to the debtor's filing a bankruptcy petition,

Allstate commenced an action against the debtor in the United States District Court for the Southern District of New York seeking to recover the $98,000 in disability benefits it had paid to the debtor and the value of the premium waivers, trebled under 18 U.S.C. § 1964(c), along with costs and attorneys' fees. The parties entered into a written settlement of this action on September 16, 1991, pursuant to which the debtor agreed to pay Allstate the reduced amount of $70,000 in monthly installments of $1,000 for a period of seventy months. The agreement further provided that in the event of default, the remaining balance owing would become due without any reduction to present value. After making one installment payment of $1,000, the debtor defaulted on the agreement. The debtor made no further payments.

## DISCUSSION

Allstate has moved for summary judgment under Federal Rule of Civil Procedure 56, which is made applicable to this adversary by Bankruptcy Rule 7056. In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362–63, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party.

*Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

Allstate's motion for summary judgment relates only to the first claim for relief in its complaint, which relies upon 11 U.S.C. § 523(a)(4). Section 523(a)(4) excepts from the discharge of an individual debtor any debt incurred as a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or *larceny.*" 11 U.S.C. § 523(a)(4) (emphasis added). Allstate's motion for summary judgment also relies upon 11 U.S.C. § 523(a)(2)(A),[2] which excepts from discharge such debts

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A).

■ Allstate seeks to have declared nondischargeable the sum of $69,000 plus interest which the debtor owes it as a result of the written settlement agreement the debtor executed to resolve the prepetition federal action Allstate had instituted against the debtor.[3] Allstate argues that the debtor's guilty plea with respect to defrauding the Social Security Administration into paying him disability benefits should be afforded preclusive effect in this proceeding. Specifically, Allstate claims that because the debtor in his guilty plea states that he was working during the period he received Social Security disability benefits, he was ineligible to receive disability benefits pursuant to the Policy he had with Allstate. Consequently, the debtor's representation to Allstate that he was not working was fraudulent because at the time he was managing Rey Caulking's

work at Co-op City. Whether the debtor actually received compensation is irrelevant. Allstate maintains that the amount it paid to the debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4).

The debtor argues that there are issues of fact which preclude summary judgment. First, the debtor contends that the settlement agreement that he entered into with Allstate to resolve the prepetition lawsuit does not contain any mention that he defrauded Allstate. Because Allstate stipulated to settle that lawsuit, the debtor argues that all of Allstate's claims merged into the settlement agreement such that his debt was converted into a contract claim and that Allstate may not now rely upon claims asserted in that lawsuit.

Second, the debtor argues that by virtue of his guilty plea to tax fraud and Social Security fraud, he is not collaterally estopped from relitigating whether any debt owing to Allstate is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4). Although the debtor does not quite go so far, he, in effect, admits that he pleaded guilty to the conduct that constitutes larceny with regard to Allstate. Nonetheless, the debtor asserts that Allstate may not use collateral estoppel offensively against him because the issue of whether the debtor committed larceny as to Allstate, as opposed to the Social Security Administration, was not actually litigated nor did the debtor plead guilty to that offense.

Third, the debtor takes the position that he did no lawful work for Rey Caulking during the period in question. The debtor stated:

> 6. In my allocution on my plea, as it related to the Social Security Administration, I admitted to having been the "de facto" manager of REY Caulking Co.,

---

**2.** Allstate does not state a cause of action in its complaint based on section 523(a)(2)(A). Allstate claims that the parties stipulated to an amended complaint to include a cause of action based upon section 523(a)(2)(A). However, the stipulation that Allstate submits as Exhibit C to its motion does not contain the debtor's signature nor was it "so ordered" by the court. The debtor does not take issue with the stipulation in its responsive papers.

**3.** Although Allstate's adversary complaint seeks $75,000 in its first claim for relief, *Adversary Complaint,* at 6, it is clear from Allstate's motion papers and memorandum of law as well as the actual settlement agreement that the amount the debtor agreed to settle the prepetition action was $70,000. Because the debtor made one payment of $1,000, Allstate seeks $69,000 in its first claim for relief. The complaint is therefore amended accordingly.

Inc. at the Coop [sic] City job during the time that I was committing bribery and money laundering there. The sum total of my management activities included the paying of bribes, writing and cashing checks and laundering money to be paid as bribes to inspectors. I *never, ever* did an honest day's work on behalf of REY Caulking Co., Inc., nor could I. From the government's point of view, and possibly correctly from their point of view, I was managing REY Caulking Co., Inc. at Coop [sic] City during the time because the government viewed REY Caulking Co., Inc. as nothing more than the vehicle for the commission of crimes. The government did not suggest, nor did I admit doing any useful, law abiding work on behalf of the company.

*Affirmation in Opposition to Motion for Summary Judgment,* at ¶ 6. In essence, the debtor argues that it did not perform the type of manual labor for Rey Caulking that he had in the past. Furthermore, the debtor contends that to the extent that Allstate suggests that he was "managing" Rey Caulking as a corporate executive while he was committing various crimes, "[t]here was nothing to manage at Coop [sic] City that constitutes an 'occupation or employment for wage or profit' that would preclude me from obtaining disability benefits'" from Allstate. *Id.* at ¶ 10. The debtor maintains that he received no pay from Rey Caulking in connection with Co-op City.

 Under the doctrine of collateral estoppel, Allstate may establish the elements of 11 U.S.C. § 523(a)(2)(A) and (4) if a prior plea of guilty to a criminal charge contains the requisite elements. *In re Boll,* 82 B.R. 107, 108–09 (Bankr.D.N.D. 1987); *In re Vandrovec,* 61 B.R. 191, 197 (Bankr.D.N.D.1986). *See, e.g., In re Cooper,* 125 B.R. 777 (Bankr.N.D.Ill.1991). In New York, the requirements of collateral estoppel are: (1) identity of issues in the two proceedings and (2) that the party sought to be estopped had a full and fair opportunity to contest the prior determination. *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co., Inc.,* 903 F.2d 114, 121, *reh'g denied,* 910 F.2d 33 (2d Cir.1990).

The issue of whether or not the debtor was working for Rey Caulking when he was receiving disability benefits from the government was necessary to the charge to which the debtor pleaded guilty, namely defrauding the Social Security Administration. Moreover, the debtor was fully represented by counsel in the criminal case and participated in every aspect of the case. Therefore, Allstate may use collateral estoppel if the debtor's guilty plea contained the necessary elements of section 523(a)(2)(A) and (4).

The crime to which the debtor pleaded guilty was defrauding the Social Security Administration to the extent that the debtor received disability benefits when in fact the debtor was working and not disabled as that term is defined in 42 U.S.C. § 1382c(a)(3)(A). Section 1382c(a)(3)(A) states that an individual is disabled

if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A) (parenthetical omitted).

 Larceny, for section 523(a)(4) purposes, is defined by federal common law. *In re Jardula,* 122 B.R. 649 (Bankr. E.D.N.Y.1990). For purposes of section 523(a)(4), larceny is proven if the debtor has wrongfully and with fraudulent intent taken property from its owner. *Kaye v. Rose (In re Rose),* 934 F.2d 901 (7th Cir. 1991).

The debtor admits having received $98,-000 in disability benefits from Allstate. As noted earlier in this decision, the Allstate Policy defines "total disability" to "mean disability which continuously prevents the insured from engaging in any occupation or employment for wage or profit for which he is reasonably qualified ... or may become qualified." The debtor's guilty plea that he defrauded the Social Security Administration by misrepresenting that he was not working required the debtor to

admit the same misrepresentation that is necessary to satisfy Allstate's larceny claim because to receive benefits from Allstate, the debtor had to represent to Allstate that he was disabled pursuant to the Policy's definition. In fact, the debtor submitted Supplemental Statements to Allstate in which he claimed that he was not employed in any capacity. Therefore, the debtor admitted in its guilty plea the precise conduct in question, namely that he was working while claiming disability benefits from Allstate. Accordingly, the guilty plea contains all of the requisite elements necessary to establish that the debtor committed a larceny as to Allstate. Thus, Allstate's debt in the amount of $69,000 plus interest, the amount sought in the first claim for relief in Allstate's complaint is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

■ To establish a cause of action pursuant to section 523(a)(2)(A), a party must prove five elements:

(1) The debtor made the representation;

(2) That at the time the representation was made, the debtor knew the representation was false;

(3) The debtor made the representation with the intention and purpose of deceiving the creditor;

(4) The creditor reasonably relied on the representation and the reliance was reasonably founded; and

(5) The creditor sustained a loss or damage as the proximate consequence of the representation having been made.

*In re Austin,* 132 B.R. 1, 3 (Bankr. E.D.N.Y.1991).

Similarly, Allstate has established all five of the elements necessary to prove that the $69,000 debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). In applying section 523(a)(4), this court has already discussed how elements (1), (2) and (3) are satisfied by the debtor's guilty plea. There can be no question that Allstate has established element (5). As to element (4), Allstate has established reasonable reliance because the debtor concedes that Allstate had its physicians examine him and because the debtor submitted numerous Sup-

plemental Statements in which he represented that he was not working from 1977 through 1985. Thus, Allstate's motion for summary judgment is granted and the debt in the amount of $69,000 plus interest, as stated in the first claim for relief in the complaint, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

■ Even if Allstate cannot use the doctrine of collateral estoppel, summary judgment should be granted to Allstate. *Cooper,* 125 B.R. at 780; *In re Owens,* 123 B.R. 434, 437 & n. 4 (Bankr.M.D.Fla.1991). There is no issue of fact with respect to whether the debtor was working for Rey Caulking, even if in a managerial capacity, while he was receiving disability benefits from Allstate. He therefore misrepresented to Allstate, in violation of the stated terms of the Policy, that he was not working in order to receive disability benefits.

■ Finally, the debtor's argument that the breached stipulation settling the prepetition federal litigation with Allstate converted the tort claim into a contract claim is rejected. In *In re Marceca,* 129 B.R. 371 (Bankr.S.D.N.Y.1991), this court held that

a subsequently breached settlement agreement does not convert the debt to a dischargeable contract claim because a debtor could simply nullify a nondischargeable claim by agreeing to settle it and then walking away from the settlement agreement with the assurance that the defaulted settlement would then be dischargeable.

*Id.* at 373. *See also Greenberg v. Schools,* 711 F.2d 152 (11th Cir.1983). Accordingly, Allstate's claim is not barred.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of this proceeding under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

2. Under the doctrine of collateral estoppel, Allstate has established nondischargeability of its debt pursuant to 11 U.S.C. § 523(a)(4). Therefore, Allstate's motion for summary judgment is granted

and their debt in the amount of $69,000 plus interest is nondischargeable.

3. Under the doctrine of collateral estoppel, Allstate has established nondischargeability of its debt pursuant to 11 U.S.C. § 523(a)(2)(A). Therefore, Allstate's motion for summary judgment is granted and their debt in the amount of $69,000 plus interest is nondischargeable.

4. Even if the doctrine of collateral estoppel is inapplicable, there is no fact in question precluding this court from granting Allstate's motion for summary judgment. Allstate has established the requisite elements of both 11 U.S.C. § 523(a)(2)(A) and (4). Therefore, Allstate's debt is nondischargeable in the amount of $69,000 plus interest.

SETTLE order on notice.