**In re Thomas A. MARTIN, Debtor.**

**Thomas A. MARTIN, Plaintiff,**

v.

**Michael J. O'CONNOR, Chapter 7 Trustee, Key Bank of New York, N.A., Elias Cadan and John B. Warner II, Defendants.**

Bankruptcy No. 92–11520.
Adversary No. 95–91272.

United States Bankruptcy Court,
N.D. New York.

Oct. 8, 1996.

Thomas A. Martin, Saratoga Springs, NY, pro se.

Deily, Testa & Dautel, L.L.P. by Jonathan D. Deily, Albany, NY, for Defendant Michael J. O'Connor, Chapter 7 Trustee.

Philip J. Danaher, Albany, NY, for Defendants Elias Cadan and John B. Warner II.

Hiscock & Barclay, L.L.P. by Michael J. Smith, Albany, NY, for Defendant Key Bank of New York, N.A.

### MEMORANDUM DECISION

JOHN J. CONNELLY, Bankruptcy Judge, Sitting by Special Designation.

Thomas A. Martin ("Martin" or Debtor") filed on October 16, 1995, an adversary proceeding against Michael J. O'Connor, Chapter 7 Trustee ("Trustee"), Key Bank of New York, N.A. ("Key Bank"), Elias Cadan ("Cadan") and John B. Warner II ("Warner") (collectively, "Defendants"). Key Bank, the Trustee, Cadan and Warner have all filed motions to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") (as made applicable herein pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure). The Trustee, Cadan and Warner have also requested sanctions. This matter came before the Court for a hearing originally on December 12, 1995. However, due to the lateness of the hour, this Court adjourned the balance of the hearing to January 24, 1996.

At the December 12 hearing, the Court recited into the record the standard for evaluating motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). Moreover, at that hearing, the Court made findings as to the motion to dismiss the Complaint's first cause of action wherein Debtor sought an order denying fees to the Trustee. The Court noted that the

Trustee had not yet filed an application for compensation in this case. Accordingly, that portion of the first cause of action seeking the denial of the Trustee's fees was dismissed as being premature, the matter not being ripe for adjudication by the Court. The first cause of action also sought a rehearing on the prior reconversion of the Debtor's bankruptcy case to a Chapter 7. A previous request by the Debtor for reconversion to Chapter 11 having been heard by the Court was also denied. That order has been appealed. As such, Martin failed to state a claim upon which the relief requested could be granted. Thus the Court dismissed the Complaint's first cause of action in its entirety.

The Court notes that, in the time between the December 12 hearing and the adjourned hearing date of January 24, 1996, Martin filed two additional motions with respect to the main bankruptcy case, one to remove the Trustee, Michael J. O'Connor pursuant to 11 U.S.C. § 324(a) and the second motion to seek relief from judgment or order pursuant to Fed.R.Civ.P. 60(b)(2), (3) and (6).

At the January 24, 1996 adjourned hearing date, this Court rendered a decision denying the Fed.R.Civ.P. 60(b)(2), (3) and (6) motion and reserved for decision the balance of the causes of actions in the adversary proceeding and the motion by Martin to remove the Trustee. Furthermore, this Court granted Martin's request to treat the motions to dismiss as motions for summary judgment pursuant to Fed.R.Civ.P. 56. This Court will address the balance of Martin's causes of actions filed in the adversary proceeding *in seriatim*. The Court will then address Martin's request to remove the Trustee.

### Procedural Background

The procedural history of the Debtor through the various state and federal courts is rather long and involved. Suffice it to say, this Court will recite only those events and decisions that are relevant to the determination of the present motions for summary judgment. Martin filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code ("Code")[1] on April 6, 1992. The Debtor was the principal of an entity entitled Kinderhill Corporation which also filed Chapter 11 at about the same time as the Debtor's filing. Generally, Debtor and his related corporations and partnership interests are engaged in various aspects of the thoroughbred industry, including breeding, racing and selling interests in horses. The Debtor's case was converted to a case pursuant to Chapter 7 of the Code on October 19, 1992 by the late Honorable Justin J. Mahoney, Chief United States Bankruptcy Judge for the Northern District of New York. *See* Exhibit 4 attached to the Notice of Key Bank of New York's Motion to Dismiss. ("Key Bank's Motion to Dismiss"). Michael J. O'Connor was appointed the interim trustee for this case on October 19, 1992. According to the papers, Judge Mahoney denied a motion by the Debtor to reconvert the case to one under Chapter 11 on January 13, 1993. This order was apparently not appealed.

On or about May 12, 1992, Judge Mahoney granted Key Bank's motion for relief from the automatic stay pursuant to § 362(d)(1) to eject Martin from real property allegedly owned by Key Bank. On March 10, 1993, Martin was evicted from the real property purportedly owned by Key Bank. Additionally, Key Bank arranged to remove and store certain items of the Debtor's personal property. Key Bank was enforcing a security agreement entered into by the Debtor on March 11, 1988 granting Key Bank a security interest in certain art, art works, antiques, furniture and other items (collectively, "Collateral") in return for loans and advances. *See* Exhibit 9 attached to Key Bank's Motion to Dismiss. Defendants Cadan and Warner were retained by the Trustee to inventory and appraise the Debtor's personal property. Cadan and Warner determined the total value of the personal property on which Key Bank asserted a security interest was approximately $160,315.00. These facts were outlined in the notice of motion seeking relief from the automatic stay provision of § 362 by Key Bank on March 22, 1993. The Trustee in the case also filed a motion returnable on the same date seeking clarification of disputed claims on the Debtor's personal

1. Unless otherwise indicated, all statutory refer- ences are to Title 11 of the United States Code.

property. The Debtor responded to both motions by filing an affidavit dated May 11, 1993. The Debtor was represented by counsel, Thomas Dussault, Esq., at this hearing. Key Bank, the Trustee and the Debtor entered into a settlement agreement on that date. However, the Trustee noticed a hearing, and an evidentiary hearing was held on June 30, 1993 with respect to the disposition of the Debtor's personal property. Martin apparently refused to execute a stipulation of settlement and a further hearing was held on this matter. On November 16, 1993, Judge Mahoney entered an order approving the stipulation of settlement's disposition of the Debtor's personal property over the absence of Martin's signature.

On December 7, 1993, the Trustee noticed a motion to auction the Debtor's non-exempt personal property to be held on January 8, 1994 and approving the terms of a stipulation entered into by the Trustee and Key Bank with respect to an action filed in Albany County Superior Court by Martin, Kinderhill Corporation and Kinderhill Investment Company against Key Bank, essentially a lender liability suit. The Trustee agreed to assign his rights and interests in that litigation to Key Bank for a sum of $2,000 and the payment of all fees and charges incurred in inventorying, categorizing and storage of the Debtor's personal property since March, 1993. *See* Exhibit 15 attached to Key Bank's Motion to Dismiss. The Trustee's counsel stated that the assignment of the lender liability suit was based on the Trustee's review of the pleadings and papers in the action, and his determination that the action was meritless. *See* Exhibit 14 attached to Key Bank's Motion to Dismiss. Martin filed a cross-motion objecting to the inclusion of certain property in the sale. Judge Mahoney granted the Trustee's motion in its entirety and denied Martin's cross-motion in all respects on January 10, 1994. Key Bank in April, 1993 filed an adversary proceeding against Martin seeking the denial of dischargeability of certain debt pursuant to § 523(a)(6) and the denial of the Debtor's discharge pursuant to § 727(A)(2), (3), (4) and (5). The Honorable David T. Stosberg, United States Bankruptcy Judge sitting by special designation presided over a six day trial. The Debtor was again represented by counsel, Thomas Dussault, Esq. Defendant Warner was one of the witnesses at this trial. Judge Stosberg rendered a decision on December 20, 1994 denying the Debtor's discharge and granting Key Bank a judgment against the Debtor in the amount of $189,956.00. This decision has been appealed by the Debtor and is *sub judice* before the Honorable Frederick J. Scullin, Jr., United States District Court Judge, oral argument having been heard on July 27, 1995.

*Discussion*

A. *Standing*

██ The Court is cognizant of the arguments raised by both the Trustee and Key Bank as to Martin's lack of standing to initiate this adversary proceeding since he can recite no injury to himself. Martin is not a creditor of the estate and has no pecuniary interest in the estate. Martin's main bankruptcy case was converted from a case in Chapter 11 to one under Chapter 7. Accordingly, pursuant to 11 U.S.C. § 323(a), the trustee is the sole representative of the estate. Martin is *not* the representative of the estate, and it is within the Trustee's powers to institute any actions related to the disposition of property and the general administration of the estate.

██ Only the trustee has the authority and the discretion to prosecute, defend and/or settle, if appropriate in its judgment, causes of action which existed at the time the order for relief was entered. *See,* 2 Collier on Bankruptcy ¶ 323.02[3] at 323–9 (15th ed. 1995). It is the trustee's duty to dispose of all the assets of the estate so as to maximize a monetary return for distribution to the creditors of the Debtor. *In re Bernier,* 176 B.R. 976, 986 (Bankr.D.Conn.1995).

██ Courts have generally acknowledged two exceptions to the general rule that a Chapter 7 debtor is not considered a "person aggrieved" because the debtor lacks pecuniary interest in the property of the estate. *In re Thompson,* 965 F.2d 1136, 1143 n. 12 (1st Cir.1992). The two exceptions are where the "... debtor can show that a successful appeal would generate assets in excess of liabil-

ities, entitling the debtor to a distribution of surplus under Code § 726(a)(6) ... or ... the order appealed from affects the terms of the debtor's discharge in bankruptcy." *Id.* The general consensus of Courts is that surplus is highly unlikely in a liquidation proceeding, and, accordingly, seeking standing based on a potential surplus is unlikely to succeed. *Slack v. Saint Paul/Seaboard Surety Co. (In re Slack),* 164 B.R. 19, 22 (Bankr.N.D.N.Y.1994), citing *Thompson,* 965 F.2d at 1147. Moreover in *Thompson,* the Court explicates that it was not only unsurprising in a liquidation proceeding that a settlement did not result in an estate surplus for the debtor, "... but also immaterial except insofar as it tends to corroborate the absence of a direct pecuniary interest on the part of the chapter 7 debtor in the allowability of the ... claims." *Id.* at 1147–48.

Martin asserts that he has standing based on the denial of his discharge which provides him with a financial interest in the estate along with the possibility of a surplus if the Trustee properly administers the estate.

The Claims Register indicates that roughly anywhere from $56 to $70 million in claims have been filed in this case. The Trustee asserts that billions of dollars in claims have been filed. *See* Supplemental Memorandum of Law of Michael J. O'Connor, Chapter 7 Trustee, in Support of Trustee's Motion for Summary Judgment Dismissing the Complaint at 6 ("Trustee's Supplemental Memorandum"). The assets of this estate consists of $46,012.68. *See* Exhibit B attached to Trustee's Supplemental Memorandum. Furthermore, the administrative expenses incurred in this estate must also be taken into account. That amount as yet is unknown. However, based on the claims filed alone, Martin is not likely to receive anything in this case. Moreover, there are no further assets to be brought into this estate. In fact, Judge Mahoney determined that the Debtor "knowingly transferred and/or canceled property of the estate with the intention of defrauding his creditors." *See* Exhibit 2 attached to Key Bank's Motion to Dismiss.

Moreover, this Court views Martin's arguments as yet another attempt to impede the Trustee's administration of this estate. To allow Martin to have standing based upon the highly speculative conjecture of a surplus, particularly in light of the claims filed in this case, would be to open the floodgates for debtors to object to a variety of the Trustee's actions in a case and frustrate the goals of the bankruptcy law, namely, an orderly and efficient administration of the debtor's estate. Accordingly, Martin lacks standing to raise the causes of actions related to the disposition of property in this estate. Nevertheless, the Court will address the causes of actions asserted by Martin for purposes of determining the motions for summary judgment.

### B. *Summary Judgment*

Fed.R.Civ.P. 56(c), made applicable here by Fed.R.Bankr.P. 7056, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, courts must determine if there are any factual issues to be tried, while at the same time, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

The Complaint's second cause of action alleges that the Trustee conspired with Key Bank to discredit Martin. Martin also asserts that Key Bank attempted to

"smear and discredit" him in the thoroughbred industry by alleging that companies of which Martin was president, filed fraudulent equine insurance claims. This allegedly precipitated an investigation by the Federal Bureau of Investigation. The Court finds that this cause of action fails to rise beyond mere conclusory allegations. Moreover, any allegations of fraud pursuant to New York law, New York Civil Practice Law and Rules ("N.Y.Civ.Prac.L. & R.") 3016(b) must be alleged with particularity. Martin's "allegations" are no more than broad conclusory statements and opinions couched as factual allegations. *See* 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 311–318 (2d ed. 1990). This will not suffice. Martin also seems to be asserting in this cause of action a defamation claim against both the Trustee and Key Bank. Pursuant to New York law, an action for defamation bears a one year statute of limitation. N.Y.Civ.Prac.L. & R. 215(3). To institute "... an action for libel or slander, the particular words complained of shall be set forth in the complaint...." N.Y.Civ. Prac.L. & R. 3016(a). Martin fails to state the particular words complained of in the Complaint. Once again, Martin makes broad conclusory allegations without providing any factual support. Accordingly, Martin's lack of compliance with N.Y.Civ.Prac.L. & R. 3016(a) and (b) and Fed.R.Civ.P. 9(b) are sufficient to deny this cause of action.

■ Martin's third cause of action alleges fraud on the part of the Trustee, Key Bank, Cadan and Warner. Martin alleges that auctioneers Cadan and Warner failed to disclose their previous or prior retention by both the Trustee and Key Bank. This cause of action is barred by the doctrine of collateral estoppel.

■ The doctrine of collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and necessarily decided against that party or those with whom the party shares privity. *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir.1993); *accord In re Gottheiner*, 703 F.2d 1136, 1139 (9th Cir.1983). The doctrine of collateral estoppel is applicable to bankruptcy cases in general and to dischargeability proceedings

in particular. If the requirements of collateral estoppel are met, relitigation of the factual issues underlying a determination of non-dischargeability is barred. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 657–59 n. 11, 112 L.Ed.2d 755 (1991); *Kelly v. Robinson*, 479 U.S. 36, 48 n. 8, 107 S.Ct. 353, 360 n. 8, 93 L.Ed.2d 216 (1986); *accord In re Guerrerio*, 143 B.R. 605, 610 (Bankr.S.D.N.Y.1992).

■ The party invoking collateral estoppel has the burden of proving all the requisites for its application. *In re Spector*, 22 B.R. 226, 231 (Bankr.N.D.N.Y.1982) (citing *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980)). The elements of the test for application of collateral estoppel are: first, whether the issue sought to be litigated is identical to an issue necessarily decided in the prior action and decisive on the present action; and second, whether the party to be bound had a full and fair opportunity to contest the determination now said to control. *Conte*, 996 F.2d at 1400; *accord Long Island Lighting Co. v. Imo Industries, Inc.*, 6 F.3d 876, 885 (2d Cir.1993); *Gottheiner*, 703 F.2d at 1139. The adjudication of fact must be by a valid and final judgment. *In re Kelly*, 155 B.R. 75, 78 (Bankr.S.D.N.Y. 1993).

■ Collateral estoppel is a flexible doctrine that ought never be rigidly or mechanically applied. *Conte*, 996 F.2d at 1400. The question as to whether a party has had a full and fair opportunity to contest a prior determination involves a practical inquiry into the realities of litigation, including a recognition that if the first proceeding involved trivial stakes, it may not have been vigorously litigated. *Kerins v. Prudential Property & Cas.*, 185 A.D.2d 403, 404, 585 N.Y.S.2d 637, 639 (3d Dep't 1992); *accord Gottheiner*, 703 F.2d at 1140.

Judge Mahoney authorized the retention of Cadan and Warner. Moreover, the issue of the purported conflict of interest was litigated before Bankruptcy Judge Stosberg as a part of the trial on the adversary proceeding instituted by Key Bank against Martin. *See* Exhibit 29 to Attorney Supplemental Affidavit in Support of Key Bank of New York's

Motion for Summary Judgment ("Key Bank's Affidavit in Support"). Martin's counsel cross-examined Warner as to who may have paid his fees. Warner replied that Key Bank paid his fees. Martin's counsel made no attempts to question Warner further to determine the nature of the conflict or bias. Furthermore, pursuant to a letter from Cadan, in response to a letter from Martin dated December 8, 1994, Cadan explained that Key Bank retained him to conduct an appraisal. *See* Exhibit 30 to Key Bank's Affidavit in Support. So, prior to the issuance of Judge Stosberg's decision rendered on December 20, 1994, Martin was fully aware of any purported conflict or bias with respect to both Cadan and Warner. However, Martin did not seek additional hearings or a new trial in front of Judge Stosberg. Accordingly, the doctrine of collateral estoppel bars Martin from relitigating this issue.

 Additionally, Martin asserts that all four defendants were involved in a fraudulent scheme to, *inter alia,* damage him and defraud the estate. An allegation of fraud must be plead with particularity as noted above. A fraud claim is particularized when it sets forth the time, place, particular contents of the false representations, the identity of the party making the false representations and the consequences of the misrepresentation. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Martin made no attempts to set forth the time, place, contents and identity of the party or parties making the alleged false representations. Martin provides the Court with no factual bases for his allegations. As previously noted, mere conclusory allegations of fraud is not sufficient to meet the requirements of Fed. R.Civ.P. 9(b), and must fail. Furthermore, this claim relates to the disposition of Martin's personal property which was litigated at the trial held by Judge Stosberg. Accordingly, the doctrine of collateral estoppel also bars this claim.

 Martin's fourth cause of action alleges fraud and a breach by the Trustee of its fiduciary duty to the estate. At least this is what the Court is able to glean from the vague and rambling allegations raised by Martin. This cause of action fails to meet the standard of Fed.R.Civ.P. 9(b). Martin provides the Court with no factual bases for the allegations of fraud and the breach of fiduciary duty by the Trustee. This cause of action is replete with conclusory allegations and opinions of events that may or may not have transpired. Martin seems to be asserting that the Trustee in the case failed to secure all the personal property of this estate. Once again, the disposition of the personal property in this case was fully litigated in front of Judge Stosberg. Accordingly, this cause of action must fail for lack of compliance with Fed.R.Civ.P. 9(b) and moreover is barred by the doctrine of collateral estoppel.

 Martin's fifth cause of action asserts that the Trustee objected to a Fed. R.Bankr.P. 2004 examination by the Debtor. This allegation is rendered moot by the Trustee's later consent to an examination by the Debtor.

 Martin's sixth cause of action alleges fraud on the part of Key Bank related to the assignment of a lender liability suit. Martin makes broad, vague and conclusory allegations to events related and unrelated to the purported fraudulent transfer of the lender liability action by the Trustee to Key Bank. However, Martin provides the Court with no factual bases for those allegations. In any event, the doctrine of collateral estoppel bars relitigation of this cause of action. The Trustee properly noticed the sale of the lender liability suit based upon his review of the merits of that case. As noted earlier, only the trustee has the authority and the discretion to prosecute, defend and/or settle, if appropriate in its judgment, causes of action which existed at the time the order for relief was entered. *See,* 2 Collier on Bankruptcy ¶ 323.02[3] at 323–9. This motion was properly noticed by the Trustee and the attorney for Key Bank properly served an affidavit in response to the Trustee's counsel. Martin is not required to receive notice since this is a Chapter 7 case and the Trustee is authorized to administer the estate. Furthermore, Martin's counsel actually received a copy of the motion, not just a notice of motion as Martin alleges. *See* Exhibit 33

attached to Key Bank's Affidavit in Support. Moreover, Martin and his counsel appeared at the hearing on the sale. Martin had ample opportunity to object at that hearing, and, if dissatisfied, appeal that order. The record does not indicate that Martin appealed the order entered by Judge Mahoney approving the sale. Accordingly, any claim of insufficient consideration for the lender liability suit is barred by the doctrine of collateral estoppel because Martin never appealed Judge Mahoney's order or sought relief from the judgment or order.

■ The last cause of action alleges fraud, conspiracy and aiding and abetting by the Trustee, Key Bank, Cadan and Warner. Martin asserts that the estate as well as the Court was defrauded by the Defendants in some manner. No factual bases for the allegations of fraud or conspiracy by the parties have been provided. No time, place, particular contents of the false representations, the identity of the parties making the false representations are provided. Martin's conclusory allegations of fraud by all four defendants are not sufficient. The particularity requirement under Fed.R.Civ.P. 9(b) exists to prevent frivolous suits and to provide the defending parties with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 100 B.R. 157, 166 (Bankr.S.D.N.Y.1989). Accordingly, the seventh cause of action fails to meet the standard of Fed.R.Civ.P. 9(b).

■ The Court now turns to the request by the Trustee, Cadan and Warner for the imposition of sanctions against the Debtor found in their original motions to dismiss the Complaint. The Court does so cognizant of the Second Circuit's instruction that courts should be sensitive to the difficulties faced by *pro se* litigants who appear in Federal Court. *Fraser v. State of N.Y., SUNY at Stony Brook*, 769 F.Supp. 91, 95 (E.D.N.Y.1991) (citing *Patrick v. LeFevre*, 745 F.2d 153, 160 (2d Cir.1984)) ("This Court has long evinced a sensitivity toward the plight of the uncounselled [plaintiff] attempting to navigate the technically-laden road to the courthouse" (internal citations omitted)). Although this decision grants the dismissal with prejudice of

the Complaint and the Court has herein determined Martin lacks standing to raise the causes of action related to the disposition of property in this estate, it appears that Debtor's actions in filing the Complaint and requesting the removal of the Trustee are driven by the Debtor's sense of loss of control of the direction of this case to the Trustee. Any perceived unreasonableness and frivolity of the lawsuit are apparently the result of Martin's overzealous attempts to hang onto the reins of this case. In this Court's view, the seemingly glaring legal and factual inadequacies of the Complaint may not be so glaring to a *pro se* litigant. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (*pro se* complaint held to "less stringent standards than formal pleadings drafted by lawyers"); *Cavallary v. Lakewood Sky Diving Center*, 623 F.Supp. 242, 246 (S.D.N.Y.1985) (sanctions inappropriate against *pro se* litigant who "lacked the training to perceive legal inadequacies"). Therefore, the Court denies the defendants' request for sanctions.

### C. *Removal of the Trustee*

■ The Court will now address Debtor's motion to remove Trustee Michael J. O'Connor pursuant to the provisions of 11 U.S.C. § 324(a), the removal of a trustee for cause. The Debtor filed an affidavit and brief as support. Many of the allegations raised in the instant motion are merely a revisiting of the allegations raised against the Trustee as causes of action in the adversary proceeding. In light of this Court's disposition of the adversary proceeding, this motion must be denied.

■ To grant a motion pursuant to § 324(a), the Court must find sufficient cause for removal of a chapter 7 trustee. Actual fraud or harm to the estate must be shown. *See In re Lundborg*, 110 B.R. 106, 108 (Bankr.D.Conn.1990). Martin does not present the Court with any factual bases for removing the Trustee in this case. Martin asserts that the Trustee willfully misled the Office of the United States Trustee with respect to a conflict of interest. Apparently, the Trustee's father-in-law was a partner with the accounting firm of Stulmaker, Roach, Dorfman & Company ("Stulmaker").

**348**

Stulmaker was retained by Martin as President of one of the Kinderhill Companies to perform the annual audit. Martin claims the relationship was directly with Mr. Roach, the Trustee's father-in-law. Martin furthermore asserts that Stulmaker failed to adequately perform the audit, and was dismissed. Martin believes that this relationship was not accurately disclosed to the Office of the United States Trustee. In fact, Martin disputes the claim made by the Trustee that Stulmaker is listed as a creditor of Debtor's estate.

The Trustee asserts that he disclosed the potential conflict to the Office of the United States Trustee shortly after his appointment in October, 1992. The Trustee informed the Office of the United States Trustee that his father-in-law was a former partner at Stulmaker. However, his father-in-law retired from the firm the year prior to his appointment as Trustee herein. The Trustee also disclosed that Stulmaker filed a claim in the debtor's estate. The Office of the United States Trustee determined that this relationship was not sufficient to warrant disqualification of the Trustee from this case.

The Court finds that the Trustee made appropriate disclosures to the Office of the United States Trustee. Accordingly, the Court will not undo the decision of the Office of the United States Trustee to retain the Trustee in this case after adequate disclosure. Consequently, the motion for removal of the Trustee is denied.

*Conclusion*

Based upon the submissions of the parties to this case, the Defendants have met their burden and have demonstrated that there is no genuine issue as to any material facts and that the Defendants are entitled to judgment as a matter of law. Accordingly, summary judgment is granted for the Defendants, this adversary proceeding is dismissed with prejudice and the request for sanctions by three of the defendants is denied. Moreover, the motion to remove the Trustee in the Debtor's main case is denied.

Settle order consistent with this **MEMORANDUM DECISION.**