In re Thomas A. MARTIN, Debtor.

Thomas A. MARTIN, Appellant,

v.

KEY BANK OF NEW YORK, Appellee.

Thomas A. MARTIN, Appellant,

v.

SCHAAP MOVING SYSTEMS, INC., Appellee,

Elias Cadan; John B. Warner, II; Virginia S. Martin; Paul G. Collins; Richard R. Cappelletti, Creditors.

Nos. 95–CV–651 (FJS), 95–CV–652 (FJS).

United States District Court, N.D. New York.

May 22, 1997.

Thomas A. Martin, Carusone & Carusone, Saratoga Springs, NY, pro se.

Hiscock & Barclay, LLP (Michael J. Smith, of counsel), Albany, NY, for Appellee Key Bank of New York.

D'Agostino, Hoblock, Greisler & Siegal, P.C., (Christian H. Dribusch, of counsel), Albany, NY, for Appellee Schaap Moving Systems, Inc.

John B. Warner, II, Chatham, NY, Creditor pro se.

Elias Cadan, Menands, NY, Creditor pro se.

Michael C. Howard, Hudson, NY, for Creditors Paul G. Collins and Richard R. Cappelletti.

Harris & Bixby (Gregory G. Harris, of counsel), Albany, NY, for Creditor Virginia S. Martin.

O'Connor, O'Connor, Mayberger & First (Michael J. O'Connor, of counsel), Albany, NY, for Chapter 7 Trustee.

## MEMORANDUM-DECISION AND ORDER

FREDERICK J. SCULLIN, Jr., District Judge.

Presently before the Court are two appeals pursuant to 28 U.S.C. § 158 from orders of the United States Bankruptcy Court for the Northern District of New York (Stosberg, J.)[1] denying motions of the appellant Thomas A. Martin to conduct several Bankruptcy Rule 2004 examinations.

## BACKGROUND

This Court has entered an order in a related appeal, *Martin v. Key Bank of New York, N.A. (In re Thomas A. Martin)*, 208 B.R. 799 (N.D.N.Y.1997) which sets forth the factual background of the case. Therefore, the underlying factual circumstances will be reiterated or expanded upon only as necessary to the disposition of the instant appeals.

Following the adversary proceeding but before decision had been issued in the underlying matter, the Bankruptcy Court issued an order sanctioning Mr. Martin. In that order, which was read into the record on November 3, 1994, the Bankruptcy Court recounted two occasions where Mr. Martin disrupted the trial of the adversary proceedings and was cautioned by the court to refrain from such actions. The court then recounted an incident reported to him by the Deputy Clerk and the Court Reporter in which Mr. Martin allegedly threatened Robert Qulia, Key Bank's attorney of record in the adversary proceeding. As a result, the Bankruptcy Court ordered Mr. Martin to "refrain from making any further comments or directing any other form of communication directly or indirectly to Mr. Qulia, anyone else in his firm, any other opposing party, the Trustee, or anyone else connected with this case." The court characterized its order as a "final caution" to Mr. Martin and stated that violation of the substance or spirit of the order would result in a order to show cause why Mr. Martin should not be held in contempt.

Following the Bankruptcy Court's decision in Adversary Proceeding No. 93–91052 in Case No. 92–11520(7), issued December 20, 1994, regarding the dischargeability of Mr. Martin from Chapter 7, Mr. Martin filed two motions which are the subject of the instant appeal. In his first motion (No. 95–CV–651), Martin moved to conduct Bankruptcy Rule 2004 examinations of Key Bank Senior Vice President Joseph Papa, Senior Vice President Joseph F. Barber and Qulia. Martin's stated purpose is to investigate the facts and circumstances surrounding Key Bank's seizure, removal and storage of the personal property involved in the seizure that was the subject of the adversary proceeding.

In his second motion (No. 95–CV–652), Martin moved to conduct Rule 2004 examinations of Schaap Moving Systems, Inc. ("Schaap"), Elias Cadan, John B. Warner, II, Virginia S. Martin, Paul G. Collins, and Dr. Richard R. Cappelletti. Schaap is the company that moved and stored the property involved in the adversary proceeding. Cadan and Warner are the auctioneer and appraiser for the Trustee. Virginia Martin is one of Mr. Martin's ex-wives. Collins is a 74-year-old travel agent who apparently traveled with his friend, Cappelletti, to the storage facility to pick up property Martin had sold to Collins.

On March 7, 1995, the Bankruptcy Court heard argument from Martin in support of his motions. In two substantially identical orders signed March 27, 1995, the court denied both motions. The Bankruptcy Court also granted appellees' cross-motions for sanctions in the form of attorneys' fees. These appeals followed.

## DISCUSSION

The District Court reviews a Bankruptcy Court's "conclusions of law *de novo*, and findings of fact under a clearly erroneous standard." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990). "[I]t is axiomatic that this court will reverse the Bankruptcy

---

1. Judge David T. Stosberg of the United States Bankruptcy Court in Louisville, Kentucky, presided by designation.

Court only if it is left with the definite and firm conviction that a mistake has been committed." *In re Abrantes Constr. Corp.,* 132 B.R. 234, 236 (N.D.N.Y.1991) (internal quotation omitted).

## I. Rule 2004 Motions

Martin argues that the Bankruptcy Court erred in denying his motions for Bankruptcy Rule 2004 examinations. This Court disagrees, finding the Bankruptcy Court's orders wholly appropriate.

■ Bankruptcy Rule 2004 allows any party in interest to examine, on motion, any person regarding the "acts, conduct, or property or the liabilities and financial condition of the debtor, or ... any matter which may affect the administration of the debtor's estate, or ... the debtor's right to a discharge." Fed. R. Bankr.P. 2004. "The general rule is that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted." *Matter of Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill. 1985).

■ Appellees raise several threshold arguments regarding this appeal. First, Key Bank argues that, as Martin is not the Chapter 7 Trustee, he has no standing to sue on the behalf of the estate. Second, Key Bank argues that Martin has had the opportunity to litigate the substance of his Rule 2004 inquiries, and thus is barred by *res judicata* from relitigating them here. This Court addresses the second argument first.

■ Under the doctrine of *res judicata,* "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). As the Supreme Court has stated, the doctrines of "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415,

66 L.Ed.2d 308 (1980). Therefore, a second action will be barred where both suits involve the same transaction or series of transactions, meaning that "'the same evidence is needed to support both claims, and ... the facts essential to the second [suit] were present in the first [suit].'" *SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1464 (2d Cir.1996) (quoting *NLRB v. United Techs. Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983)).

■ The alleged purpose of Martin's 2004 motions is to uncover new evidence with which to prove that the Bankruptcy Court's order of December 20, 1994, was incorrect or inappropriate. However, Martin was afforded a full and fair opportunity to litigate those issues in an adversary proceeding before the Bankruptcy Court that included five days of trial, numerous witnesses and over 60 exhibits.[2] That adversary proceeding, initiated by Key Bank some eighteen months prior to the trial, offered Martin and his attorney all forms of discovery but, as the Bankruptcy Court noted, "[o]nly now that Mr. Martin has lost his case does he, ironically, seek discovery." *In re Martin,* No. 92–11520(7), Memorandum at 2 (Bankr.N.D.N.Y. Mar. 27, 1995). Even if, as Martin contends, his concerns were not fully litigated below, he had eighteen months before trial in which to do so, and principles of finality "apply not merely to the actual relitigation of prior decided issues, but also to matters ancillary to litigation such as discovery." *See Wilcher,* 56 B.R. at 436.

Having found the issues on appeal barred by *res judicata,* this Court need not address the remaining threshold question of Martin's standing, nor the underlying merits of the appeal.

## I. Sanctions

■ Martin also appeals that portion of the Bankruptcy Court's order granting appellees' cross-motions for sanctions in the form of attorneys' fees, and the order preventing Martin from contacting any parties associated with this case.

---

**2.** This Court also notes that while Martin is representing himself *pro se* before this Court, he was represented by counsel in the adversary proceeding before the Bankruptcy Court.

■ The Bankruptcy Court has authority under Fed. R. Bankr.P. 9011 to award sanctions in appropriate circumstances. The Bankruptcy Court's decision to award sanctions, under Rule 9011 or otherwise, must be upheld on review unless an abuse of discretion. *See Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir.1991). While *pro se* litigants are not necessarily expected to have as sophisticated an understanding of the law as a bankruptcy attorney, they are still held to the same standards of conduct in Rule 9011. *See In re KTMA Acquisition Corp.*, 153 B.R. 238, 251–52 (Bankr.D.Minn. 1993).

The Bankruptcy Court made extremely clear why it was awarding sanctions in the form of attorneys' fees and an order prohibiting Martin from contacting the opposing parties except through "good faith pleadings and hearings conducted by the Court." [3] *In re Martin*, No. 92–11520(7), Memorandum at 3. The Bankruptcy Court found that Martin's "real purpose" in the instant motions was "to, perpetuate the conflict with Key Bank in any form whatsoever and in flagrant disregard of the rules of this Court." *Id.* at 2. In light of the fact that "Martin has displayed a persistent pattern of misbehavior and disrespect for the Bankruptcy Court and the rules designed for the protection of all parties," the court concluded that Martin's "present approach can only be viewed as harassment that borders on an obsession that unfairly creates costs, anxiety and perhaps even fear among the parties he seeks to examine." *Id.*

■ Where the Bankruptcy Court finds sanctionable conduct, it has broad discretion in fashioning a sanction appropriate to the circumstances. *See Lancellotti v. Fay*, 909 F.2d 15, 20 (1st Cir.1990); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir.1990) (in the analogous instance of Rule 11 sanctions, "the Civil Rules place virtually no limits on judicial creativity"). The primary purpose of sanctions by the Bankruptcy Court is to deter future violations. *See Matter of Reynolds*, 117 B.R. 452, 455 (1990).

■ The Bankruptcy Court's sanction was well within its discretion. Given past experience with Martin, and judging these Rule 2004 motions to be essentially frivolous and designed to harass appellees, an award of attorneys' fees was well warranted. *See* Fed R. Bankr.P. 9011. As to the restriction on Martin's communication with the opposing parties, this sanction, while extreme, is warranted given Martin's continual abuse of the litigation process and harassment of other parties, particularly counsel to Key Bank, the primary creditor in the underlying adversary proceeding.[4] Extreme circumstances call for extreme measures to maintain the integrity and order of the litigation process.

■ As a final matter, Key Bank requests the award of attorneys' fees to appellees in this appeal. That request is denied, this Court finds that the circumstances of this appeal are not extreme enough to warrant an exception to the rule that attorneys' fees are not ordinarily awarded to the successful party.

### CONCLUSION

For the foregoing reasons, the judgments of the Bankruptcy Court on each of the instant appeals are AFFIRMED in all respects.

IT IS SO ORDERED.

---

3. The latter sanction was essentially a reiteration of the court's "final caution" in its order of November 3, 1994.

4. In explaining its order of November 3, 1994, which similarly ordered Martin to refrain from contacting anyone involved with the case, the Bankruptcy Court focused upon one particular event in which, after the judge left the courtroom, "Martin made some remarks directed to [Key Bank's attorney] which were characterized in a quote as a legal threat and that he also told [the attorney] that ... 'I will get you.' " (Tr. of Nov. 3, 1994, at 3).